# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RAYMOND J. BERGERON DAVILA,

        Plaintiff,

v.

BARBARA A. TEELING, BRAD FRIEND, MELISSA MORAN, ANTHONY LACOMBE, FAYE FLANCHER, and JOHN DOES,

        Defendants.

Case No. 17-CV-337-JPS

**ORDER**

    Plaintiff Raymond J. Bergeron Davila, who is incarcerated at Columbia Correctional Institution, proceeds in this matter *pro se*. He filed a complaint alleging that the defendants violated his constitutional rights. (Docket #1). This matter comes before the court on Plaintiff's petition to proceed without prepayment of the filing fee (*in forma pauperis*). (Docket #2).[1] Plaintiff has been assessed and paid an initial partial filing fee of $0.36. *See* 28 U.S.C. § 1915(b)(1).

    The court shall screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or

---

[1] Following the Court's April 6, 2017 Order (Docket #7), Plaintiff submitted a copy of his prisoner trust account statement (Docket #8). Plaintiff's motion for an extension of time to submit his trust account statement (Docket #6) therefore will be denied as moot.

that seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint that offers mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint's allegations

"must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts should follow the principles set forth in *Twombly* by first, "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. *Id.* If there are well-pleaded factual allegations, the court must, second, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To state a claim for relief under 42 U.S.C. Section 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Plaintiff's allegations relate to a time when he was incarcerated in the Racine County Jail (the "Jail"). (Docket #1 at 2). Two of his claims are based on an allegedly improper body cavity search. *Id.* at 5-14. Specifically, Plaintiff states that in early 2016, Defendant Brad Friend ("Friend") sought a search warrant to conduct a body cavity search on Plaintiff, solely to punish Plaintiff for his continual self-harming behavior. *Id.* at 5. Plaintiff alleges that Friend had influence with Defendant Judge Faye Flancher

("Flancher") of the Racine County Circuit Court, and he used it to obtain his desired warrant. *Id.* at 6-7.

On June 8, 2016, Plaintiff was taken to a local hospital by Defendant Anthony Lacombe ("Lacombe") and other officers. *Id.* at 8-9. The search warrant provided that Plaintiff could be subjected to medical imaging scans as well as a physical cavity search. *Id.* An x-ray did not show any foreign objects in Plaintiff's body. *Id.* at 10. Nevertheless, Lacombe insisted that Plaintiff should be cavity searched. *Id.* The hospital's medical staff performed the cavity search at Lacombe's request, and it too apparently turned up no foreign objects. *Id.* at 11-12. Plaintiff was then returned to the Jail. *Id.* at 12. Plaintiff alleges that Lacombe and the other jail staff taunted him about the cavity search, suggesting that it would teach him a lesson. *Id.*

Plaintiff's first claim with respect to the cavity search is for cruel and unusual punishment in violation of the Eighth Amendment. *Id.* at 3, 14, 21-26. His second claim is that the cavity search was done in violation of the Fourth Amendment because probable cause was absent. *Id.* at 4, 14, 21-26. Both claims are asserted against Friend, Flancher, and Lacombe. *Id.* at 14.

Plaintiff may proceed on a claim for cruel and unusual punishment against Friend and Lacombe for the cavity search incident. A strip or cavity search of a prisoner can violate the Eighth Amendment when it "was motivated by a desire to harass or humiliate rather than by a legitimate justification, such as the need for order and security in prisons." *King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015). Plaintiff adequately alleges that Friend and Lacombe's sole motivation was to humiliate and punish him. Though Friend was not physically present for the search, Plaintiff alleges that he obtained the warrant with a malicious purpose and the intent that the search be carried out. Further, Friend is identified as a lieutenant, and

Lacombe as a sergeant, so the Court can infer that Friend had ordered Lacombe to carry out his will.

Plaintiff may also proceed against Friend and Lacombe under the Fourth Amendment. The Fourth Amendment requires that searches conducted by government agents be done in a reasonable manner. *Id.* at 899. Prisoners like Plaintiff have extremely limited Fourth Amendment rights, but they do at least extend to bodily integrity. *Id.* at 900. Plaintiff's allegations support the inference that the cavity search was unreasonable, given that the x-ray had been negative for the presence of contraband. Friend and Lacombe may later argue that the warrant immunized their conduct or that the search was otherwise reasonable, but the Court will let them decide which defenses, if any, may be applicable to this case.

Plaintiff may not proceed on any claims against Flancher. As a judicial officer in Wisconsin, Flancher "cannot be sued for damages under § 1983 or state law for judicial actions, even if the judge commits a procedural error or acts in excess of authority, unless the judge acts in clear absence of jurisdiction." *Da Vang v. Hoover*, 478 F. App'x 326, 327 (7th Cir. 2012). Plaintiff does not allege that Flancher lacked jurisdiction, only that she was complicit in the search by issuing the warrant.[2] Flancher must be dismissed from this action with prejudice.

Plaintiff's third and fourth claim arises from events soon after the search. (Docket #1 at 15-20). These claims involve Defendants Barbara

---

[2]Further, Plaintiff *could not* credibly allege that Flancher lacked jurisdiction. The Wisconsin Constitution vests the authority to issue warrants in courts and judges. *See State v. Williams*, 814 N.W.2d 460, 468 (Wis. 2012). Flancher is a Racine County judge and the search warrant was issued for Plaintiff while he resided in the Jail. There is certainly no "clear absence of jurisdiction" which could override Flancher's immunity.

Teeling ("Teeling"), Friend, Sergeant Melissa Moran ("Moran"), John Doe Deputy Inspector 1 ("Inspector 1"), and John Doe corrections officers 2 through 5 ("Officer 2," etc.), all of whom were correctional personnel at the Jail (the "Corrections Defendants"). *Id.* at 16. On June 16, 2016, Plaintiff was put in a restraint chair, apparently due to suicidal thoughts or actions related to the cavity search. *Id.* While strapped in the chair, he bit himself enough to cause bleeding. *Id.* at 17. The Corrections Defendants all witnessed this (at various times, while performing their other duties) but did nothing to stop it; at most, they asked him to stop and did no more after he refused. *Id.* Eventually, Plaintiff was taken to the hospital for treatment for the bite wounds. *Id.* at 18-19; *see also id.* at 27-29 (additional allegations related to the biting incident, largely duplicative of those otherwise referenced).

Plaintiff may proceed against the Corrections Defendants for their deliberate indifference to his serious medical needs, in violation of the Eighth Amendment. Claims for deliberate indifferent to an inmate's suicide risk are legion in federal courts, and so extensive case law has developed to interpret them. The basic formulation of the claim involves an objective and a subjective component. *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006). First, Plaintiff must show that the harm (or potential harm) was objectively, sufficiently serious and a substantial risk to his health. *Id.*; *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "It goes without saying that 'suicide is a serious harm.'" *Sanville v. McCaughtry*, 266 F.3d 724, 733 (7th Cir. 2001) (quoting *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996)). While it is not clear that Plaintiff's biting could have actually led to his death, it was nevertheless a serious self-harming action.

Second, Plaintiff must establish that Defendants displayed deliberate indifference to his risk of suicide. *Collins*, 462 F.3d at 761; *Sanville*, 266 F.3d at 733. This, in turn, requires a dual showing that Defendants (1) subjectively knew that Plaintiff was at substantial risk of committing suicide and (2) were deliberately indifferent to that risk. *Matos ex rel. Matos v. O'Sullivan*, 335 F.3d 553, 556 (7th Cir. 2003). Plaintiff's allegations, viewed generously, can support each showing. Plaintiff alleges that each defendant knew he was biting himself severely, and that they did nothing for some time (possibly more than an hour).

Also as part of the suicide incident, Plaintiff alleges that Defendant John Doe 6, identified as "Medical Staff" by Plaintiff, attempted to evaluate Plaintiff but could not because Plaintiff refused treatment. (Docket #1 at 19). Plaintiff states that the Medical Staff Doe should have sought a court order permitting him to inject Plaintiff with a sedative. *Id.* Plaintiff cannot state a deliberate indifference claim against the Medical Staff Doe. He was not indifferent to Plaintiff's medical needs, but was prevented from addressing them by Plaintiff's own conduct. *See Hahn v. Walsh*, 915 F. Supp. 2d. 925, 953 (C.D. Ill. 2013) ("Because prisoners have the right to refuse medical treatment and the right to refuse meals, courts have held that a plaintiff cannot refuse treatment and food and then complain that defendants were deliberately indifferent to [his] medical and nutritional needs." (quotation omitted)).

Plaintiff's final claim is that he was treated differently than other suicidal inmates, in that Defendants did less to protect him from his self-harming behavior. (Docket #1 at 20). In this context, Plaintiff asserts a "class-of-one" style claim, wherein he must prove that he was "intentionally treated differently from others similarly situated and that there is no

rational basis for the difference in treatment." *Engquist v. Ore. Dep't of Agr.*, 553 U.S. 591, 601 (2008). While most circuits require highly specific allegations regarding the "similarly situated" element to validly state such a claim, the Seventh Circuit has set an extremely low pleading standard. *Geinosky v. City of Chicago*, 675 F.3d 743, 747-48 (7th Cir. 2012). While Plaintiff's allegations are vague as to the identity of any comparators, and the difference in treatment they receive, it must allow him to proceed on the claim at this time.

Finally, in the "Relief Wanted" portion of his complaint, Plaintiff references John Doe 7 for the first time. (Docket #1 at 31). Without any substantive allegations linked to this defendant, he must be dismissed from this action.

In sum, the court finds that the plaintiff may proceed on the following claims pursuant to 28 U.S.C. § 1915A(b):

**Claim One**: Excessive force in causing the cavity search to be performed, in violation of the Eighth Amendment, against Friend and Lacombe;

**Claim Two**: Unreasonable search in causing the cavity search to be performed, in violation of the Fourth Amendment, against Friend and Lacombe;

**Claim Three**: Deliberate indifference to Plaintiff's serious medical needs during the events of June 16, 2016, in violation of the Eighth Amendment, against Teeling, Friend, Moran, Inspector 1, and Officers 2 through 5; and

**Claim Four**: Intentionally treating Plaintiff differently than other similarly situated persons with respect to suicide prevention, in violation

of the Fourteenth Amendment, against Teeling, Friend, Moran, Inspector 1, and Officers 2 through 5.

Accordingly,

**IT IS ORDERED** that the plaintiff's motion for leave to proceed without prepayment of the filing fee (*in forma pauperis*) (Docket #2) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that plaintiff's motion for an extension of time to submit his trust account statement (Docket #6) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that the defendants Faye Flancher, "Medical Staff" John Doe 6, and John Doe 7 be and the same are hereby **DISMISSED** from this action **with prejudice**;

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the complaint and this order upon the defendants pursuant to Federal Rule of Civil Procedure 4. The plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). Although Congress requires the court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service;

**IT IS FURTHER ORDERED** that the defendants shall file a responsive pleading to the complaint;

**IT IS FURTHER ORDERED** that the agency having custody of the prisoner shall collect from his institution trust account the balance of the filing fee by collecting monthly payments from the plaintiff's prison trust

account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If the plaintiff is transferred to another institution, county, state, or federal, the transferring institution shall forward a copy of this Order along with plaintiff's remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where the inmate is confined;

**IT IS FURTHER ORDERED** that, pursuant to the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. If the plaintiff is no longer incarcerated at a Prisoner E-Filing institution, he will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

The plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 23rd day of May, 2017.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge